IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEVON LYLES, | ) | CASE NO. 3:07CV1315 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE OLIVER |
| v. | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| ROB JEFFREYS, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2). Devon Lyles ("Lyles") petitions this court for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 on May 7, 2007. Lyles is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to a journal entry of sentence in the case of *State of Ohio v. Lyles*, Case No. CR2004 0064 (Allen County 2004). For the reasons given below the magistrate judge recommends that the petition be dismissed.

I

On May 4, 2005 the Allen County grand jury indicted Lyles on two counts of trafficking in crack cocaine in violation of Ohio Rev. Code § 2925.03(A) & (C)(4)(e), a felony of the second degree (counts one and two); one count of trafficking in crack cocaine the vicinity of a school in violation of Ohio Rev. Code § 2925.03(A) & (C)(4)(d), a felony of the

second degree (count three); and one count of permitting drug abuse in violation of Ohio Rev. Code § 2925.13(A) & (C)(3), a felony of the fifth degree (count four). The grand jury included a specification for forfeiture of property in connection with count three. Lyles pleaded not guilty to the charges in the indictment. The state later dropped the allegation of drug trafficking in the vicinity of a school, reducing the allegation of drug trafficking in count three to a third degree felony. On June 29, 2004 a jury found Lyles guilty as to all charges in the amended indictment.

The trial court held a sentencing hearing on August 4, 2004. Prior to sentencing, the court found that the holding in *Blakely v. Washington*, 542 U.S. 296 (2004), did not apply to Ohio's sentencing statutes. The court determined that a prison term was mandatory with regard to counts one, two, and three, citing Ohio Rev. Code §§ 2929.13(F) and 2929.12(B). The court also determined that a prison term was appropriate upon making the following findings: (1) Lyles committed the offense for hire or as part of an organized criminal activity; (2) Lyles was previously adjudicated a delinquent child or the offender had a history of criminal convictions; (3) Lyles had not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child or had not responded favorably to sanctions previously imposed for criminal convictions; (4) Lyles showed no genuine remorse for the offense; (5) considering the factors set forth in Ohio Rev. Code § 2929.12, Lyles was not amenable to community control sanctions; (6) a combination of community control sanctions would demean the seriousness of Lyles's conduct and its impact on the victim; and (7) a sentence of imprisonment was commensurate with the seriousness of Lyles's conduct and its impact on the victim.

After determining that a prison term was required, the court sentenced Lyles to three

2

years' imprisonment on count one, three years' imprisonment on count two, two years' imprisonment on count three, and ten months' imprisonment on count four. The terms of imprisonment for the first three counts were to be served consecutively to each other, and the term of imprisonment for count four was to be served concurrently with the sentences in counts one through three. The court also imposed up to three years of community control and fined Lyles $13,750.00. The court justified the consecutive sentences by making the following findings: (1) such sentences were necessary to protect the public and were not disproportionate to Lyles's conduct and the danger he posed; (2) the harm Lyles had done was so great or unusual that a single term would not adequately reflect the seriousness of his conduct; (3) his criminal history showed that consecutive sentences were necessary to protect the public. In imposing prison terms greater than the minimum term, the court made the following findings: (1) the shortest term would demean the seriousness of the crime; (2) the shortest term would not protect the public from future crime by the defendant or others; and (3) Lyles posed the greatest likelihood of committing future crimes.

Lyles filed a timely notice of appeal. Lyles asserted six assignments of error in the state appellate court:

 I. The Trial Court erred in sentencing the Defendant by not imposing a minimum sentence, in violation of R.C. §2929.14(B).

 II. The Trial Court erred in sentencing the Defendant by imposing consecutive sentences, in violation of R.C. §2929.14(E)(4).

 III. Sentencing in this case violated the *Apprendi* doctrine as explained in *Blakely v. Washington* and was therefore unconstitutional.

 IV. The conviction for the first transaction was against the manifest weight of the evidence.

3

> V. The conviction for the second transaction was against the manifest weight of the evidence.
>
> VI. The conviction for the third transaction was against the manifest weight of the evidence.

On December 27, 2005 the state appellate overruled Lyles's assignments of error and affirmed the judgment of the trial court.

Lyles timely appealed the decision of the state appellate court to the Ohio Supreme Court. In his memorandum in support of jurisdiction, Lyles asserted two propositions of law:

> Proposition of Law #1: Ohio Sentencing Law is Unconstitutional for Violation of the Right to Counsel.
>
> Proposition of Law #2: Trial Courts Must Find a Course of Conduct Before Finding Great or Unusual Harm for Consecutive Sentencing.

On May 17, 2006 the Ohio Supreme Court reversed the decision of the appellate court and remanded the case to the trial court for re-sentencing consistent with *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E.2d 470 (2006).[1]

On July 11, 2006 the trial court held a sentencing hearing at which Lyles testified very briefly. At the hearing, Lyles's attorney argued, *inter alia*, that sentencing Lyles in accordance with *Foster* would violate the *ex post facto* clause of the United States Constitution. The court re-imposed the original sentence of three years' imprisonment on count one, three years' imprisonment on count two, two years' imprisonment on count three, ten months' imprisonment on count four, community control, and a fine of

---

[1] *Foster* severed the provisions of the Ohio sentencing statutes that required courts to engage in the sort of judicial factfinding barred by *Blakely* and permitted courts to sentence defendants anywhere within the sentencing range appropriate to an offense. *See infra* at 16.

4

$13,750.00.[2] In re-sentencing Lyles, the trial court made the following findings and considered them as advisory factors: (1) Lyles committed the offense for hire or as part of an organized criminal activity; (2) Lyles was previously adjudicated a delinquent child or the offender had a history of criminal convictions; (3) Lyles had not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child or had not responded favorably to sanctions previously imposed for criminal convictions; (4) Lyles showed no genuine remorse for the offense; (5) considering the factors set forth in Ohio Rev. Code § 2929.12, Lyles was not amenable to community control sanctions; (6) a combination of community control sanctions would demean the seriousness of Lyles's conduct and its impact on the victim; (7) a sentence of imprisonment is commensurate with the seriousness of Lyles's conduct and its impact on the victim; and (8) considering the factors set forth in Ohio Rev. Code § 2929.12, a prison term was consistent with the principles and purposes of sentencing and Lyles was not amenable to community control sanctions.

Lyles filed a timely notice of appeal. Lyles asserted a single assignment of error in his appeal:

I. The sentence imposed on remand was imposed pursuant to a judicially-created version of Ohio sentencing laws that, applied retroactively to Mr. Lyles, violated his freedom from ex post facto laws.

On November 27, 2006 the state appellate court affirmed the judgment of the trial court.

Lyle filed a timely notice of appeal in the Ohio Supreme court. In his memorandum

---

[2] In its original judgment entry of sentencing, the court mistakenly imposed a three year term of imprisonment on count three. The court amended this sentence *nunc pro tunc* to the original two years in an amended judgment entry of sentencing.

5

in support of jurisdiction, Lyle asserted a single proposition of law:

> Proposition of Law #1: Ohio Sentencing Law in Unconstitutional for Violation of the Right of Due Process.

On March 28, 2007 the Ohio Supreme Court declined jurisdiction to hear the case and dismissed the appeal as not involving any substantial constitutional question.

Lyles filed in this court a petition for a writ of habeas corpus on May 7, 2007. Lyles asserts one ground for relief in his petition:

> A. Ground one: The sentence imposed in this case, of a non-minimum, consecutive sentence for a person who had served no prior prison sentence, was unconstitutional for violation of his rights of presentment to a grand jury, trial by jury, and proof beyond a reasonable doubt of essential facts without which such sentence could not be imposed.

Respondent filed an Answer/Return of Writ on September 4, 2007. Doc. No. 9. Lyles filed a Traverse on September 5, 2007. Doc. No. 10. Thus, the petition is ready for decision.

II

*A. Jurisdiction*

Writs of habeas corpus may be granted by a district court within its respective jurisdiction:

> Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a) and (d).

Lyles was convicted in the court of common pleas in Allen County. This court has jurisdiction over Lyles's petition.

*B.     Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings. 28 U.S.C. § 2254(e)(2). There is no need for an evidentiary hearing in the instant case. Lyles's claim involves legal issues which can be independently resolved without additional factual inquiry.

*C.     Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus. 28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991). If any state procedures for relief remain available, the petitioner has not exhausted state remedies. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies. *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986). The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims. *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

Lyles has no remaining state remedies for his claims. Because Lyles has no

remaining state remedies, his claims are exhausted.

*D. Procedural default*

Procedural default occurs when a petitioner fails to present his constitutional claims fairly to the highest state court in a federal constitutional context. *Anderson,* 489 U.S. 4; *Picard,* 404 U.S. 270. Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977). When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750 (1991).

Respondent argues that Lyles has procedurally defaulted that portion of his ground for relief that contends the sentence imposed after remand violated his rights to a grand jury, trial by jury, and proof beyond a reasonable doubt of the facts necessary for a conviction. Respondent contends that the only argument Lyles made to the state appellate court was that his re-sentencing violated his right to be free from *ex post facto* laws. Lyles denies that he has defaulted any portion of his claim.

Examination of the appellate briefs in the two appeals taken to the state appellate court reveals that Lyles referred to denial of trial by jury in his appeal from re-sentencing. He referred to the denial of that right, however, only to compare that denial to the wrong alleged to have resulted from Lyles' re-sentencing pursuant to the Ohio sentencing statutes as revised by the Ohio Supreme Court in *Foster*. The only federal constitutional claim

8

raised in Lyles' initial appeal to the state appellate court was his contention that his sentence violated the rule in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), as clarified in *Blakely v. Washington*, 542 U.S. 296 (2004). The only federal constitutional claim raised in Lyles' appeal of his re-sentencing is that his re-sentencing violated due process by punishing him pursuant to an *ex post facto* statute. In his memorandum in support of jurisdiction to the Ohio Supreme in his initial appeal, Lyles' argued that his sentence in violation of *Blakely* denied him his right to counsel. Lyles also argued in passing that the sentence denied him his right to a jury trial. In his memorandum in support of jurisdiction in his appeal of his re-sentencing, Lyles argued that his re-sentencing violated due process by punishing him pursuant to an *ex post facto* law.

The only portion of Lyles' ground for relief that has not been defaulted is his claim that his re-sentencing violated due process by punishing him pursuant to an *ex post facto* law. Under Ohio law, a criminal constitutional question cannot ordinarily be raised in the Ohio Supreme Court unless it is first presented in the court below. *State v. Jester*, 32 Ohio St. 3d, 147, 154, 512 N.E. 2d 962 (1987). It is unlikely that the Ohio Supreme Court would reach the merits of claims that were not raised in the underlying appellate proceeding. Where the state courts are silent as to the reasons for denying a petitioner's due process claim, the Sixth Circuit has applied the presumption that the state court "would not have ignored its own procedural rules and would have enforced the procedural bar." *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996). As the only part of Lyles' ground for relief presented both in the state appellate court and the Ohio Supreme Court is the claim that Lyles' re-sentencing violated due process by punishing him pursuant to an *ex post facto* law, the other aspects of his claim in this court should be dismissed as procedurally

9

defaulted. Thus, his contentions that his re-sentencing violated his rights to a grand jury, trial by jury, and proof beyond a reasonable doubt of the facts necessary for a conviction should not be considered.

III

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus. As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence. *Carey v. Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000). Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction. *Carey*, 127 S. Ct., at 653.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established

> Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court). A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result. *Id.* at 405-06. "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." *Id.* at 405. A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand. *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001). If a court fails to identify the correct legal principal at issue, the "unreasonable application of" clause does not apply. *Id.* at 730.

"[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence." *Id.* The magistrate judge will consider Lyles' ground for relief under the deferential standard of review accorded the state court's determination of a prisoner's constitutional claims.

Lyles argues that his re-sentencing violated his due process right not to be sentenced pursuant to an *ex post facto* law. Respondent denies that Lyles' re-sentencing violated his right to due process.

According to Lyles, *Foster* resulted in a new sentencing law in Ohio, one that redefined the potential penalty for Lyles' criminal conduct. Prior to *Foster*, judges who

11

wanted to sentence a defendant to more than a minimum sentence or to consecutive sentences were required to make certain findings of fact sufficient to overcome Ohio's presumption in favor of the shortest sentence within a sentencing range and the presumption in favor of concurrent sentences. After *Foster*, the presumptions in favor of minimum and concurrent sentences have been eliminated. Ohio judges are no longer required to make findings of fact to justify greater than minimum or concurrent sentences. The result, Lyles contends, is that Lyles did not have fair warning of a criminal prohibition, and his punishment pursuant to the new statute violates due process. Lyles cites *Bouie v. City of Columbia*, 378 U.S. 347, 353 (1963), in support of the proposition that "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law, such as Art. I, § 10, of the Constitution forbids." *See also Rogers v. Tennessee,* 532 U.S. 451, 459 (2001).

Lyles' argument is not well-taken for three reasons. First, the judicial enlargement of a criminal statute in *Bouie* was very different from the alleged enlargement in *Foster*. In *Bouie*, a South Carolina statute prohibited entry onto land after the posting of notice prohibiting such entry. Defendants were arrested pursuant to that statute during a lunch counter sit-in for civil rights when they were ordered to leave after being notified that they were trespassing if they remained. The defendants had not been given notice prohibiting their entry to the lunch counter prior to their entry. Upon appeal, the South Carolina supreme court re-interpreted the relevant statute to prohibit remaining on a property after notice was given as well as entry onto the property. The Supreme Court struck down the convictions and agreed with the appellants that South Carolina had punished them for conduct that was not criminal at the time they committed it, thus violating the requirement

of the due process clause that a criminal statute give fair warning of the conduct which it prohibits. According to the Court, "If a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' it must not be given retroactive effect." Bouie, 378 U.S. at 354 (quoting Hall, GENERAL PRINCIPLES OF CRIMINAL LAW (2d ed. 1960), at 61).

*Foster* differs considerably from *Bouie*. *Foster* did not criminalize any conduct which had not been criminal prior to the decision. Nor did *Foster* increase the maximum penalty that could be handed down for a crime. Rather, *Foster* excised those portions of Ohio's sentencing statute that required judicial findings of fact before a court could sentence a defendant to more than a minimum sentence or to consecutive sentences. *Bouie* stands for the proposition that a court may not criminalize conduct after the conduct has occurred, not for the proposition that a court may not alter how a defendant is sentenced after the criminal conduct at issue has occurred.

Second, Lyles' position is foreclosed in part by Dobbert v. Florida, 432 U.S. 282 (1977). Lyles contends that Ohio may not sentence him pursuant to a statute that it modified after Lyles' criminal conduct because this fails to give him fair warning of his potential punishment. As the Eleventh Circuit first pointed out in United States v. Duncan, 400 F.3d 1297 (11th Cir. 2006), *Dobbert* contradicts this proposition:

> After Dobbert's murders, the Florida death penalty statutes were found unconstitutional under the principles of Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). However, Florida promptly enacted a new death penalty procedure, under which Dobbert was tried, convicted and sentenced to death. Dobbert argued that there was no death penalty in effect in Florida at the time of his criminal conduct, because the then extant Florida statute was declared invalid after the time of his criminal conduct, an argument based on the *Ex Post Facto* Clause. The Supreme Court readily rejected Dobbert's argument, holding in relevant part:

13

> But this sophistic argument mocks the substance of the *Ex Post Facto* Clause. Whether or not the old statute would in the future, withstand constitutional attack, it clearly indicated Florida's view of the severity of murder and of the degree of punishment which the legislature wished to impose upon murderers. The statute was intended to provide maximum deterrence, and its existence on the statute books provided fair warning as to the degree of culpability to which the State ascribed to the act of murder.
>
> Petitioner's highly technical argument is at odds with [a statement from *Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940) ]. Here the existence of the statute served as an "operative fact" to warn the petitioner of the penalty which Florida would seek to impose on him if he were convicted of first-degree murder. This was sufficient compliance with the *ex post facto* provision of the United States Constitution.

*Duncan*, 400 F.3d at 1307-08 (quoting *Dobbert*, 432 U.S. at 297-98) (bracketed insertion by the quoting court). Similarly, although Ohio's sentencing statutes at the time of Lyles' criminal acts were unconstitutional, they nevertheless gave him fair notice of the acts that were prohibited and the degree of punishment which the Ohio legislature wished to impose on those who committed those acts. As the reinterpreted statute did not increase the maximum penalty to which Lyles was potentially subject, Lyles cannot say that he was not given fair warning of what was prohibited or of the potential penalties to which he would be subject if he committed those acts. This is particularly true because Lyles received the same sentence under the reformed statute as he did under the original statute. *See United States v. Alston-Graves*, 435 F.3d 331, 343 (D.C. Cir. 2006); *United States v. Vaughn*, 430 F.3d 518, 524-25 (2d Cir. 2005); and *United States v. Lata*, 415 F.3d 107, 112 (1st Cir. 2005).

Third, Lyles' position is contradicted by *U.S. v. Booker*, 543 U.S. 220 (2005), and its progeny. In *Booker*, the Supreme Court confronted the constitutionality of a federal sentencing statute that resembled Ohio's insofar as it required specified judicial findings

14

of fact for upward departures from a base sentence. The Court found that such mandatory factfinding violated the holding in *Apprendi* and excised those portions of the statute requiring judicial factfinding before increasing a base sentence. The court also allowed courts to engage in factfinding in determining sentences by using the previously-mandatory sentencing factors as guidelines that should be considered in sentencing. The Court required other federal courts to apply both parts of its holding--striking the mandatory findings on Sixth Amendment grounds and using the previously-mandatory factors as guidelines--to future cases because applying both holdings in combination best approximated the will of Congress in enacting sentencing reform. *Id.* at 249. Finally, the Court struck those sections of the statute requiring a relatively strict appellate review for departures from mandatory sentencing and found that the resulting statute implied appellate review under a "reasonableness" standard. *Id.* at 259-60.

> The Court made the following relevant point in reaching the decision in *Booker*:
>
> We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. . . . [W]hen a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.

*Id.* at 233. What made mandatory factfinding for upward departures unconstitutional was that it made certain sentencing factors, in effect, elements of the offense. This denied the defendant a trial by jury and trial by a standard of "beyond a reasonable doubt" on all elements of the offense. Instead, certain elements were given to the judge to decide on a "preponderance of the evidence" standard. That the elements were called "factors" or "guidelines" was irrelevant: They served as aggravating elements mandating increased punishment.

15

When the Ohio Supreme Court determined that Ohio's sentencing statutes violated the holding in *Blakely*, it explicitly turned to *Booker* to cure the statutes' unconstitutionality. *Foster*, 109 Ohio St. 3d at 26-27, 845 N.E.2d at 495-96. Thus, the Ohio Supreme Court excised those portions of the statutes requiring judicial factfinding using certain factors before making upward departures from a base sentence. *Id.*, 109 Ohio St. 3d at 28-30, 845 N.E.2d at 497-98. It also instructed courts to use the factors enumerated in the statutes as guidelines in making sentencing determinations. *Id.*, 109 Ohio St. 3d at 30, 845 N.E.2d at 498. Sentencing courts were thus free to sentence defendants anywhere within the sentencing ranges set by the Ohio legislature for various crimes, using the previously-mandatory factors as guidelines to determine where in the range a defendant should be sentenced. The resulting statutes, according to the Ohio Supreme Court, best approximated the will of the legislature in passing the sentencing statutes while doing away with the statutes' unconstitutionality. *Id.*

Lyles contends that the revised Ohio sentencing statutes more closely resemble the Determinate Sentencing Law ("DSL") in California, struck down by the Supreme Court in *Cunningham v. California*, ___ U.S. ___, 127 S. Ct. 856 (2007), than the sentencing regime resulting from *Booker*. Respondent errs. The DSL provided three tiers of sentences applicable to each crime. The DSL required sentencing courts to begin with a middle-tier sentence, then use certain factors and other factors that the court reasonably deemed relevant to determine whether the sentence should be raised to a higher tier or reduced to a lower tier. Courts could move to a new tier only after the court found and placed on the record the requisite findings of fact. Some of this judicial factfinding related to a prior record and prior prison terms and was permitted by *Apprendi* and *Booker*. Other judicial

16

factfinding, such as causing great bodily harm or threatening great bodily harm, was not permitted by those cases. In *Cunningham*, the Supreme Court found that California's DSL violated the holdings in *Apprendi* and *Blakely*:

> Ultimately, the [California Supreme Court] relied on an equation of California's DSL system to the post-*Booker* federal system. "The level of discretion available to a California judge in selecting which of the three available terms to impose," the court said, "appears comparable to the level of discretion that the high court has chosen to permit federal judges in post-*Booker* sentencing." 35 Cal.4th, at 1261, 29 Cal.Rptr.3d 740, 113 P.3d, at 548. . . .
>
> The attempted comparison is unavailing. As earlier explained . . . this Court in *Booker* held the Federal Sentencing Guidelines incompatible with the Sixth Amendment because the Guidelines were "mandatory and imposed binding requirements on all sentencing judges." 543 U.S., at 233, 125 S.Ct. 738. "[M]erely advisory provisions," recommending but not requiring "the selection of particular sentences in response to differing sets of facts," all Members of the Court agreed, "would not implicate the Sixth Amendment." *Ibid.* To remedy the constitutional infirmity found in *Booker,* the Court's majority excised provisions that rendered the system mandatory, leaving the Guidelines in place as advisory only. *Id.*, at 245-246, 125 S.Ct. 738. . . .
>
> California's DSL does not resemble the advisory system the *Booker* Court had in view. Under California's system, judges are not free to exercise their "discretion to select a specific sentence within a defined range." *Booker,* 543 U.S., at 233, 125 S.Ct. 738. California's Legislature has adopted sentencing triads, three fixed sentences with no ranges between them. Cunningham's sentencing judge had no discretion to select a sentence within a range of 6 to 16 years. His instruction was to select 12 years, nothing less and nothing more, unless he found facts allowing the imposition of a sentence of 6 or 16 years. Factfinding to elevate a sentence from 12 to 16 years, our decisions make plain, falls within the province of the jury employing a beyond-a-reasonable-doubt standard, not the bailiwick of a judge determining where the preponderance of the evidence lies.
>
> Nevertheless, the [California Supreme Court] attempted to rescue the DSL's judicial factfinding authority by typing it simply a reasonableness constraint, equivalent to the constraint operative in the federal system post-*Booker.* See 35 Cal.4th, at 1261, 29 Cal.Rptr.3d 740, 113 P.3d, at 548 ("Because an aggravating factor under California law may include any factor that the judge reasonably deems relevant, the [DSL's] requirement that an upper term sentence be imposed only if an aggravating factor exists is comparable to *Booker's* requirement that a federal judge's sentencing decision not be unreasonable."). Reasonableness, however, is not, as the *Black* court would have it, the touchstone of Sixth Amendment analysis. The

17

> reasonableness requirement *Booker* anticipated for the federal system operates *within* the Sixth Amendment constraints delineated in our precedent, not as a substitute for those constraints. Because the DSL allocates to judges sole authority to find facts permitting the imposition of an upper term sentence, the system violates the Sixth Amendment. It is comforting, but beside the point, that California's system requires judge-determined DSL sentences to be reasonable. *Booker's* remedy for the Federal Guidelines, in short, is not a recipe for rendering our Sixth Amendment case law toothless.
>
> To summarize: . . . [O]ur decisions from *Apprendi* to *Booker* point to the middle term specified in California's statutes, not the upper term, as the relevant statutory maximum. Because the DSL authorizes the judge, not the jury, to find the facts permitting an upper term sentence, the system cannot withstand measurement against our Sixth Amendment precedent.

*Cunningham v. California,* ___ U.S. ___, 127 S. Ct. 856, 869-71 (2007) (footnotes omitted).

Ohio's sentencing statutes as revised by *Foster* do not resemble California's DSL in any relevant respect. Ohio's revised sentencing statutes do not require judicial findings of fact before departing from a prescribed sentencing range. Ohio courts may sentence defendants anywhere within prescribed ranges, using the statutory factors as discretionary guidelines. Ohio judges may not exceed a statutory maximum upon making requisite findings. Ohio's revised system, therefore, does not run afoul of *Apprendi* or *Blakely* as California's DSL did.

A number of federal defendants have alleged that the federal sentencing statutes reshaped by *Booker* violate due process because they subject defendants to *ex post facto* laws. Those challenges have been universally rejected. *See United States v. Scroggins,* 411 F.3d 572, 575-78 (5th Cir. 2005); *United States v. Jamison,* 416 F.3d 538, 539 (7th Cir. 2005); *United States v. Dupas,* 417 F.3d 1064, 1068-69 (9th Cir. 2005); *United States v. Rines,* 419 F.3d 1104, 1106 (10th Cir. 2006); *Duncan,* 400 F.3d at 1306-08; and *Alston-Graves,* 435 F.3d at 343. Lyles makes no argument that distinguishes in any

18

relevant respect Ohio's revised sentencing statutes from the revised federal sentencing statutes upheld by the appellate courts. Lyles' only ground for relief, therefore, is not well-taken.

IV

For the reasons given above Lyles's single ground for relief should be overruled and his petition should be dismissed with prejudice.

Dated:  April 18, 2008                                 s:\Nancy A. Vecchiarelli
                                                Nancy A. Vecchiarelli
                                                United States Magistrate Judge

**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v.Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**